IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 20, 2017

**SHAWNTE L. SHADE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 107438      Scott Green, Judge**

_____

**No. E2017-00562-CCA-R3-PC**

_____

The Petitioner, Shawnte L. Shade, appeals from the Knox County Criminal Court's denial of his petition for post-conviction relief. The Petitioner contends that his guilty plea was not knowingly and voluntarily entered because of the ineffective assistance of his trial counsel. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Shawnte L. Shade.

Herbert H. Slatery III, Attorney General and Reporter; Linda D. Kirklen, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

On March 31, 2015, the Petitioner pled guilty to one count of especially aggravated robbery. In exchange for the Petitioner's guilty plea, the State dismissed a second count of especially aggravated robbery and recommended that the Petitioner be sentenced as a Range I, standard offender to the minimum fifteen-year sentence with service at one hundred percent pursuant to Tennessee Code Annotated section 40-35-501(i).

At the plea submission hearing, the prosecutor recommended a sentence of fifteen years "to serve . . . at [one hundred] percent." The trial court then explained that the Petitioner would be sentenced to "[fifteen] years at [one hundred] percent, with the possibility of earning [fifteen] percent off." The trial court further explained that the Petitioner would have to serve at least eighty-five percent of his sentence before he would be eligible for release.

The trial court then reviewed the rights the Petitioner was waiving by pleading guilty. During this review, the Petitioner stated that trial counsel had reviewed the plea agreement form with him and that he was satisfied with trial counsel's representation. The trial court also stated as follows:

> It's my understanding that you have agreed to receive the minimum of [fifteen] years for [the] offense; however, that is at a [one hundred] percent service rate, meaning, that you must serve at least [eighty-five] percent before you could meet with the parole board and receive good time credit off the back-end of the sentence.

The trial court asked the Petitioner if he understood his sentence, and the Petitioner responded that he did.

As a factual basis for the Petitioner's guilty plea, the State provided that the Petitioner had gone to the apartment of a coworker, stabbed her in the neck, and took $1,800 "that was left over from [the victim's] income tax return." The trial court asked the Petitioner how he pled, and the Petitioner responded "[g]uilty." Sensing some hesitation from the Petitioner, the trial court asked the Petitioner if he was "certain this [was] what [he] want[ed] to do," and the Petitioner responded that it was "the best thing" he could do.

The trial court questioned the Petitioner further, and the Petitioner stated that he had gone to the victim's apartment "to buy dope." The Petitioner admitted that he stabbed the victim in the neck and that he "took the drugs (inaudible) hand from her property." The Petitioner then stated that he was "taking [the] plea because it[ was] [fifteen] years" and because it was the "best of both bad situations." After this, the trial court accepted the Petitioner's guilty plea and the State's sentencing recommendation.

On February 26, 2016, the Petitioner filed a pro se petition for post-conviction relief alleging that his guilty plea was not knowing and voluntary because trial counsel was ineffective and had misinformed him about the amount of time he would actually have to serve before he could be released from prison. An attorney was appointed to represent the Petitioner in this matter, but no amended petition for post-conviction relief was filed.

The Petitioner testified at the post-conviction hearing that he told trial counsel that he "never committed a robbery." The Petitioner admitted that he stabbed the victim in the neck. However, the Petitioner claimed that he did not take any money from the victim. According to the Petitioner, he stabbed the victim because she had not provided him "the amount [of cocaine] that [they] agreed on," and he left her apartment with only "the dope that was put in [his] hand."

The Petitioner claimed that trial counsel never showed or reviewed with him the discovery materials provided by the State. The Petitioner testified that he reviewed the discovery materials after his guilty plea and learned that there was no evidence regarding "the amount of the money" and "[h]ow the money was obtained" by the victim. The Petitioner asserted that he wanted trial counsel to attempt to prove that the victim did not have $1,800. The Petitioner explained that he thought "if somebody tells you that [they] have a receipt for this, well, [they should] show [] the receipt."

The Petitioner admitted that the detective who questioned him told him that he was accused of stabbing the victim and taking money from her. The Petitioner testified that he confessed to the detective that he stabbed the victim, although he told the detective that he thought he stabbed the victim in the chest rather than her neck. The Petitioner further admitted that trial counsel told him that he was accused of taking "some money" from the victim.

The Petitioner claimed that he would not have pled guilty had he known he was accused of taking $1,800 from the victim as opposed to "just a number." The Petitioner testified that trial counsel told him that "nobody really cares how much the money" that was stolen. The Petitioner further testified that he "would almost agree" if he had been accused of taking the cocaine and "the money that [he] spent" on the cocaine, but that he would not admit to taking $1,800 because that "could've been proven or not proven."

Despite this, the Petitioner testified that he "deserved what [he] got." The Petitioner explained that he agreed to accept the State's plea offer of fifteen years to be served at one hundred percent and that he did so without knowing how much money he was accused of taking because trial counsel advised him that his time would be "stretched . . . out more" if he went to trial and that he "was looking at almost a life sentence."

With respect to his sentence, the Petitioner admitted that his plea agreement form stated that his sentence would be fifteen years to be served at one hundred percent. The Petitioner claimed that he did not read the plea agreement form and that trial counsel "just ran through it right fast." The Petitioner admitted that this was not the first time he had pled guilty to a felony.

The Petitioner testified that when he pled guilty, he believed that he would only have to serve twelve years and nine months because he had "been in prison" and he knew "when somebody says a hundred percent, that there's not a hundred percent." The Petitioner claimed that he told trial counsel that he could not serve a fifteen-year sentence "day-for-day." The Petitioner further claimed that once he got to prison, he discovered that he was not eligible for any sentencing credits.

Both the prosecutor and the Petitioner's attorney agreed when the post-conviction court stated that the Petitioner was wrong and that, as was explained at the plea submission hearing, the Petitioner was eligible to receive sentencing credits for up to fifteen percent of his sentence. The Petitioner admitted that he may have "read [the law] wrong," but he asserted that he was told by a prison "legal aid" that he could not get any sentencing credits.

The Petitioner testified that he "understood that [he] was signing [the plea agreement form] in lieu of going to trial and getting a [R]ange [II sentence] starting at [twenty-five] and ending up with [forty] years, or multiple charge[s] with [twenty-five] years stacked together" and that he thought "it was better for [him] to sign [it] and go ahead and do [his] time," but that his "time sheet" said "a hundred percent" and did not have a "deduction" or "say standard, mitigated, [R]ange [I], none of that."

Trial counsel testified that he met with the Petitioner several times and that he spoke with the detective and the prosecutor about the case. Trial counsel could not recall if he spoke to the victim, but he did speak to the victim's attorney. Trial counsel recalled that the Petitioner had confessed to stabbing the victim and had "admitted to taking something away from the house." The Petitioner told trial counsel that the stabbing "was a drug deal that went wrong."

Trial counsel testified that he talked about the State's discovery response with the Petitioner. However, trial counsel could not recall if he showed the Petitioner the photographs or documents from the discovery materials. Trial counsel testified that he told the Petitioner that the victim had accused the Petitioner of taking money from her and that he explained to the Petitioner that the amount of the money was not legally relevant for purposes of an especially aggravated robbery charge.

Trial counsel testified that he was able to negotiate with the prosecutor and secure an offer where the Petitioner would be sentenced as a Range I, standard offender to fifteen years to be served at one hundred percent. Trial counsel admitted that he initially told the Petitioner the wrong percentage of time that could be taken off his sentence, but that he corrected himself and informed the Petitioner that "with good time he would get [fifteen] percent off his sentence." Trial counsel testified the he felt confident that the

Petitioner would earn sentencing credits because he had "always been good . . . in custody."

Trial counsel testified that he advised the Petitioner to accept the plea offer. Trial counsel explained that the Petitioner had enough prior felony convictions to be classified as a Range II, multiple offender and would have faced a minimum sentence of twenty-five years if convicted at trial. Trial counsel further explained that he believed the Petitioner was more likely to be sentenced near the maximum of forty years because the Petitioner had prior convictions for "attempted murder" and aggravated robbery. Additionally, the prosecutor had advised trial counsel that she was considering seeking a superseding indictment for attempted first degree murder and especially aggravated kidnapping.

Trial counsel recalled that he advised the Petitioner that the Petitioner's claim that he thought he had stabbed the victim in her chest and only took the cocaine he had bought from the victim would not be a convincing defense at trial. Trial counsel testified that he reviewed the plea agreement form with the Petitioner, that the Petitioner signed the form, and that it was the Petitioner's choice to plead guilty. Trial counsel believed that the Petitioner was "well aware of what kind of jeopardy he was in," that he "knew what he was getting into[,] and he entered his plea."

On March 8, 2017, the post-conviction court entered a written order denying post-conviction relief. The post-conviction court accredited the testimony of trial counsel over the Petitioner's. The post-conviction court concluded that the Petitioner was properly advised "that he was pleading guilty to an offense with a service rate of one hundred percent [] with the possibility of receiving credit of up to fifteen percent [] of the sentence." The post-conviction court further concluded that the Petitioner "made a knowing and intelligent choice to waive his right to trial and to enter a plea of guilty." The post-conviction court stated that "[g]iven the enormity of the potential punishment [the Petitioner] faced, coupled with the strength of the [S]tate's case, no competent attorney providing effective assistance of counsel would [have] advise[d] [the Petitioner] to reject the offer he ultimately accepted."

## ANALYSIS

The Petitioner contends that his guilty plea was not voluntarily and knowingly entered. The Petitioner argues that trial counsel was ineffective for failing to properly investigate his case and for failing to share the State's discovery response with him. The Petitioner further argues that trial counsel misinformed him about the amount of time he would actually have to serve before he could be released from prison. The State responds that the post-conviction court did not err in denying the petition.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In the context of a guilty plea, like the present case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

Here, the post-conviction court accredited trial counsel's testimony over the Petitioner's. Trial counsel testified that he met with the Petitioner several times and spoke with the detective, the prosecutor, and the victim's attorney. Trial counsel further testified that he discussed the State's discovery response with the Petitioner. At the post-conviction hearing, the Petitioner took issue with the fact that trial counsel did not inform him of the exact amount of money he was accused of taking from the victim and that trial counsel did not attempt to investigate whether the victim actually got an income tax refund for that amount. We doubt that the Petitioner would not have accepted the State's plea offer for those reasons given the possibility of receiving a forty-year sentence at trial and facing other charges in a superseding indictment.

Despite having conceded this issue in the post-conviction court, the Petitioner's attorney argues that trial counsel misinformed the Petitioner about the amount of time he would actually have to serve before he could be released from prison. The Petitioner cites to Gordon Wayne Davis v. State, No. E2015-00772-CCA-R3-PC, 2016 WL 4737010 (Tenn. Crim. App. Sept. 9, 2016), to support his argument. However, Davis is inapplicable here. The Petitioner in Davis had been misinformed by his trial counsel and the trial court that he could receive sentencing credits when he statutorily could not. Id. at *9. Here, the Petitioner was properly informed by trial counsel and the trial court that he could receive sentencing credits to reduce his sentence by fifteen percent pursuant to Tennessee Code Annotated section 40-35-501(i). Accordingly, we conclude that the post-conviction court did not err in denying the petition.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-7-